UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62212-CIV-BLOOM

BPI SPORTS, LLC,

      Plaintiff,

v.

LABDOOR, INC.,

      Defendant.
_____/

## ORDER ON MOTION TO DISMISS

This matter is before the Court upon Defendant Labdoor, Inc.'s Motion to Dismiss ("Motion"), ECF No. [27]. The Court has reviewed the Motion, all supporting and opposing filings, the record and this case, and is otherwise fully advised in the premises. For the reasons set forth below, the Motion is granted. However, amendment will be allowed.

## I. INTRODUCTION

Plaintiff BPI Sports, LLC ("BPI") manufactures, markets, and sells a variety of dietary and nutritional supplements and sports nutrition products, including a product known as "Best BCAA," a supplement containing branched chain amino acids ("BCAAs"). *See* Complaint ("Compl."), ECF No. [1] at ¶¶ 8-15. Rather than containing isolated, free-form quantities of the proteinogenic BCAAs leucine, isoleucine, and valine, Best BCAA contains multi-chain peptides, which combine the aforementioned amino acids. *See id.* at ¶¶ 15, 34-35. Defendant LabDoor, Inc. ("LabDoor") operates www.labdoor.com, where it purports to rank and grade dietary and nutritional supplements and drugs, including, among others, BPI's Best BCAA. *See id.* at ¶ 16. According to LabDoor, it purchases supplements off retail shelves, sends the products to an

1

"FDA-registered laboratory for [] detailed chemical analysis," collects the laboratory results, and "builds algorithms to translate th[e] data into simple grades and rankings." *Id.* at ¶ 17. The "FDA-registered laboratory" referenced in LabDoor's materials appears to be Avomeen Analytical Services, which was co-founded by LabDoor's CEO in 2010. *See id.* at ¶¶ 20-22.

Although it allegedly provides no information regarding the selection and maintenance of the tested products and no explanation as to how its algorithms are derived or the scientific basis for the same, LabDoor grades and rates supplements in five categories: label accuracy, product purity, nutritional value, ingredient safety, and projected efficacy. *See id.* at ¶¶ 23-29. Other than this vague analysis, LabDoor does not conduct any research, clinical trials, or human studies, which BPI contends "are more appropriate methods of testing the safety and efficacy of the supplements being tested and compared." *Id.* at ¶ 29. At some point, LabDoor utilized its "algorithm" and research to formulate a list of the best BCAA supplements available on the market. *See id.* at ¶ 35; *see also* Testing Summary, ECF No. [27-1]. LabDoor gave BPI's Best BCAA a grade of "D" when comparing it to the other 23 supplements. *See* Compl. at ¶ 37.

According to BPI, LabDoor's analysis simply isolates the individual BCAAs and "fails to account for the nutritional value of the chemical combination created by the multi-chain peptides" in Best BCAA. *Id.* at ¶ 36. Thus, BPI contends that LabDoor "improperly compares [] [] Best BCAA to the other BCAA supplements" and, as a result, has "deliberately and falsely given [] [] Best BCAA a grade of D and a rank of 24 out of 24 when comparing it with the other BCAA supplements, none of which contain [leucine, isoleucine, and valine] as multi-chain peptides." *Id.* at ¶ 37. In an interesting twist, LabDoor sells the product it ranks and grades as number one, thereby using false and improper analysis to dissuade and actually deceive consumers into purchasing the BCAA supplement sold by LabDoor, instead of BPI's Best

BCAA.  *See id.* at ¶¶ 31-32, 38-43.  This conduct has caused BPI to suffer ongoing harm "including, but not limited to, competitive harm, diverted or lost sales, and harm to the goodwill and reputation of BPI."  *Id.* at ¶ 44.

Consequently, BPI initiated this action, seeking monetary and equitable relief pursuant to the Lanham Act's false advertising provision, 15 U.S.C. § 1125(a), *id.* at ¶¶ 49-61 (Count I), Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act"), Fla. Stat § 501.201 *et seq.*, *id.* at ¶¶ 70-79 (Count III), and under a theory of tortious interference with an advantageous business relationship, *id.* at ¶¶ 62-69 (Count II).  LabDoor now seeks dismissal of Counts II and III under Federal Rule of Civil Procedure 12(b)(6).  *See generally* Motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  To survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While it "does not need detailed factual allegations," a complaint requires "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do."  *Id*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a

complaint rest on "naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. Dismissal of a complaint, under Rule 12(b)(6) is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Educ. v. Marshall County Gas. Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003). Ultimately, "[d]ismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (internal quotation omitted).

### III. DISCUSSION

First, LabDoor contends that BPI cannot maintain its tortious interference with an advantageous business relationship because such claim is improperly directed to the community at large. Motion at 4-6. Second, LabDoor believes that BPI's FDUTPA claim is insufficient for four independent reasons: (1) BPI fails to establish a transaction; (2) BPI fails to allege the element of causation; (3) BPI fails to allege the element of actual damage; and, (4) BPI fails to allege "bad faith." *Id.* at 4-10. These matters are addressed in turn.

**A.      Tortious Interference with an Advantageous Business Relationship**

A claim for tortious interference with a business relationship requires the plaintiff to demonstrate: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (quoting *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348-49 (11th Cir. 1987)); *see also W.D. Sales & Brokerage LLC v. Barnhill's Buffet of Tenn., Inc.*, 362 F. App'x 142, 143 (11th Cir. 2010) ("[I]n order to state a claim upon which relief can be granted for tortious interference with a business relationship, the [plaintiffs are] required to allege the following: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." (internal quotation and formatting omitted)). Under the first prong, "the plaintiff may allege 'tortious interference

5

with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large.'" *Coach Servs.*, 752 F. Supp. 2d at 1273 (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994)). Stated differently, "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* (quoting *Ethan Allen* at 815). Thus, this cause of action requires the plaintiff to "prove a business relationship with identifiable customers." *Id.* (quoting *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996)).

BPI avers that its allegations of tortious interference do not pertain to the community at large but, rather, for interference with the business relationships BPI maintains with its "present and prospective customers," also referred to by BPI as its "targeted consumer base." *See* BPI's Response in Opposition ("Resp."), ECF No. [36] at 3-4; Compl. at ¶ 42. For the most part, these vague references to BPI's business relationships with unidentifiable, potential, and/or future customers are precisely the speculative, community-at-large allegation prohibited under governing Florida law. The case of *Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, sheds light on the speculative nature of BPI's allegations.

In *Coach Services*, counterclaim plaintiffs, "Lucky," shipped various sunglasses to the United States, where, upon arrival, U.S. Customs photographed the goods and emailed the pictures to counterclaim defendant, "Coach." 752 F. Supp. 2d at 1273. Coach instructed U.S. Customs to destroy the sunglasses, despite Coach's knowledge that the goods would be sold to Lucky's customers in the United States. *Id.* The Court found the allegations that Lucky "was planning to sell its sunglasses to 'various customers'" to be "too vague and abstract to satisfy the

first element of a tortious interference claim." *Id.* Here, BPI makes ambiguous reference to "consumers" and potential purchasers. *See* Compl. at ¶¶ 42-43. While a plaintiff may draft his or her complaint with a "high order of abstraction" and need not "specifically identify each of the relationships allegedly interfered with," *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1570 (S.D. Fla. 1996), the plaintiff must, nevertheless, plead with reference to "identifiable customers." *Ferguson*, 687 So. 2d at 821.

In line with existing precedent, BPI may allege interference with existing customers as such customers would be readily identifiable. For instance, Judge Dimitrouleas declined to dismiss a tortious interference claim on this basis, noting that an identifiable group of customers had been produced (those individuals who had previously purchased the plaintiff's products and were part of the plaintiff's customer list). *See Envtl. Solutions Assn. 1 v. Prof Laboratories, Inc.*, Case No. 13-cv-61051-Dimitrouleas, ECF No. [91] (S.D. Fla. Dec. 9, 2013) (citing *E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.*, No. 8:10-CV-1870-T-27AEP, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011) *report and recommendation adopted*, No. 8:10-CV-1870-T-27AEP, 2011 WL 3841631 (M.D. Fla. Aug. 30, 2011). Similarly, in *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538 (S.D. Fla. 1996), the Court found that a plaintiff's allegations that the defendants had "interfered with advantageous and on-going business relationships with existing customers" was sufficient to support a claim for tortious interference with a business relationship, notwithstanding the fact that the pleading was drafted "at a high order of abstraction." *Id.* at 1570. Although BPI attempts to persuade the Court that its allegations are made with respect to existing customer relationships, a review of the pertinent allegations renders this argument unpersuasive. Construed generously, any reference to BPI's customers is vague. In reality, the allegations are a thinly veiled attempt to avoid stating that

such allegations are made simply concerning hypothetical consumers generally. *See* Compl. at ¶ 42 (referencing a "consumer base"). As such, dismissal of BPI's claim for tortious interference with a business relationship is warranted.

**B.     FDUTPA**

FDUTPA's purpose is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages. S*ee Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (citing *Chicken Unlimited, Inc. v. Bockover*, 374 So. 2d 96, 97 (Fla. 2d DCA 1979)); *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008). As noted, LabDoor challenges BPI's FDUTPA claim on three independent bases.

**1.     "Consumer Transaction"**

First, LabDoor contends that BPI fails to allege that it actually engaged in a transaction. This challenge implicates an ongoing debate occurring as a consequence of the 2001 amendments to FDUTPA. Prior to 2001, § 501.211(2) of FDUTPA read as follows:

> In any individual action *brought by a consumer* who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105; however, no damages, fees, or costs shall be recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

§ 501.211(2), Fla. Stat. (2000) (emphasis added). In 2001, the legislature modified the provision's language to apply to "persons" rather than "consumers," and currently reads:

8

> In any action *brought by a person* who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

§ 501.211(2), Fla. Stat. (2001) (emphasis added).  Some courts have interpreted the modified language to expand FDUTPA's protections to "a broader base of complainants."  *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356, 1373 (S.D. Fla. 2010) (citing *Niles Audio Corp. v. OEM Sys. Co., Inc.*, 174 F. Supp. 2d 1315, 1320 (S.D. Fla. 2001); *North Amer. Clearing, Inc. v. Brokerage Computer Sys.*, 666 F. Supp. 2d 1299, 1309-10 (M.D. Fla. 2009); *James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecomms., Inc.*, No. 3:07-cv-598-J-32MCR, 2008 WL 360803, at *2-3 (M.D. Fla. Feb. 8, 2008); and *Gritzke v. M.R.A. Holding, LLC*, No. 4:01CV495-RH, 2002 WL 32107540, at *4 (N.D. Fla. March 15, 2002)) (further citations omitted).  Other courts, however, have declined to similarly expand FDUTPA.  *See Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349-50 (S.D. Fla. 2009); *Cannova v. Breckenridge Pharm., Inc.*, No. 08–81145–CIV, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9, 2009); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv947-J-33HTS, 2008 WL 2950112, at *8-9 (M.D. Fla. July 31, 2008).

BPI was, admittedly, not a party to any consumer transaction.  Thus, the Court must determine whether BPI can maintain a suit.  This Court aligns itself with the former line of cases: given the requirement that FDUTPA be construed liberally, see Fla. Stat. § 501.202, the legislature's switch from "consumer" to "person" evinces an intention to expand § 501.211(2)

protections to non-consumers.[1] In fact, one Florida court has recently determined that a plaintiff may maintain a FDUTPA action in substantially similar circumstances.

The plaintiff in *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164 (Fla. 4th DCA 2015), commenced an action under FDUTPA after receiving an "F" grade from the Better Business Bureau ("BBB"). *Id.* at 166. The plaintiff asserted that the BBB was deceptive in its practices, including, *inter alia*, its representation that it utilized an unbiased rating system and conducted an adequate investigation before rating a particular enterprise. *Id.* The trial court dismissed the plaintiff's FDUTPA claim as it lacked an allegation that the plaintiff was a consumer under FDUTPA. *Id.* On appeal, the Florida's Fourth District Court of Appeal reversed and remanded, concluding that the 2001 legislative amendment to indicated that FDUTPA was no longer to be applied exclusively to consumers but, also "to other entities able to prove the remaining elements of the claim as well." *Id.* at 169. Although BPI did not engage in a consumer transaction, it, nonetheless, believes that it was harmed by similar behavior, namely, an unsubstantiated, biased, and deceptive rating system.

Accordingly, the Court declines to dismiss BPI's FDUTPA claim on this basis, and the Court must next examine BPI's allegations to determine if the remaining elements of a FDUTPA claim, causation and damages, are present. LabDoor avows that BPI has established neither of these elements. The Court agrees as to actual damages only.

2. **Causation**

---

[1] LabDoor requests that the Court find Judge Marra's opinion in *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339 (S.D. Fla. 2009), to be dispositive on this issue. Notwithstanding Judge Marra's diligent examination of the law, nothing requires this Court to accept the opinion as legal dogma. While Judge Marra's opinion is expertly written and incredibly thorough, the Court finds Judge Torres' reading of the law in *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F. Supp. 2d 1356 (S.D. Fla. 2010), to be more persuasive and, ultimately, to contain the correct application of FDUTPA's language.

While some courts have hinted that the causation requirement requires a plaintiff to prove that the consumer actually relied on the deceptive practice, see, e.g., *Kais v. Mansiana Ocean Residences, LLC*, 08–CV–21492–FAM, 2009 WL 825763, at *2 (S.D. Fla. Mar. 25, 2009) (dismissing claim because Plaintiff failed to state that the alleged deceptive act "caused him to enter into the contract . . . or caused him to act differently in any way"), the Eleventh Circuit has plainly resolved this issue, stating that "FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (quotation omitted); *see also Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." (internal quotation omitted)). Instead of actual reliance, a plaintiff must simply prove that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone*, 332 F. App'x at 567.

In the Complaint, BPI alleges that LabDoor's various misrepresentations concern: (1) "its independence in grading and ranking BCAA supplements while LabDoor directly sells its No. 1 ranked BCAA supplement"; (2) its statement that "it sends BCAA supplements to an independent FDA laboratory for chemical analysis when that laboratory is owned and controlled by the CEO of LabDoor . . ."; (3) its failure "to acknowledge the nutritional value of the chemical combination created by the multi-chain peptides in BPI Sports Best BCAA"; and (4) its

knowingly misleading statement that "the efficacy of a supplement can be determined merely by isolating the quantities of each chemical contained in the supplement." *See* Compl. at ¶ 75. BPI further alleges that these representations have actually deceived, or will likely deceive, consumers. *Id.* at ¶¶ 42-43. Albeit imprecise, these allegations are sufficient. BPI clearly alleges that LabDoor's misrepresentations are "likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone*, 332 F. App'x at 567.

        **3.**       **Actual Damages**

As to the element of actual damages, FDUTPA permits recovery for "actual damages." *Rollins*, 951 So. 2d at 869. Generally, the standard measurement for actual damages "is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)) (describing this measurement as being "well-defined in the case law"). "Actual damages" does not include consequential damages. *Id.*; *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000); *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824-25 (Fla. 4th DCA 2010); *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010). "'Consequential' or 'special' damages are those 'which do not necessarily result from the injury complained of or which the law does not imply as the result of that injury.'" *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 828 n.5 (Fla. 4th DCA 2010) (quoting 17 Fla. Jur. 2d Damages § 140).

BPI asserts that LabDoor's conduct causes harm in the manner of "competitive harm, diverted or lost sales, and harm to the goodwill and reputation of BPI." *Id.* at ¶ 44; *see also id.* at

¶ 41 (noting that the representations have "induced" customers to purchase other BCAA supplements). These are consequential damages. The harm allegedly incurred relates to BPI's purportedly lost profits and business. *See QSGI, Inc. v. IBM Glob. Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *5 (S.D. Fla. Mar. 14, 2012). "[A]s the Eleventh Circuit has explained, 'lost profits may indeed be the quintessential example of consequential damages.'" *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000) (quoting *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987)). BPI does not present any facts supporting a claim that LabDoor's study has affected the market value of BPI's product. Because this element is lacking, BPI's claim for damages under FDUTPA fails.[2]

### 4. Malice, Bad Faith

Although rendered moot by the preceding Section, the Court, nevertheless, takes this opportunity to address LabDoor's arguments concerning malice. Under FDUTPA, "damages, fees, or costs are not recoverable . . . against a retailer who has, *in good faith*, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part." Fla. Stat. § 501.211(2) (emphasis supplied). Thus, a retailer's good faith may preclude damages under FDUTPA.

Yet, LabDoor cites no authority indicating that allegations of bad faith make up a material element of a FDUTPA claim and the Court is unable to locate the same. Contrary to LabDoor's contentions, the case of *Joyeria Paris, SRL v. Gus & Eric Custom Servs., Inc.*, No. 13-22214-CIV, 2013 WL 6633175 (S.D. Fla. Dec. 17, 2013), is inapposite: the Court in *Joyeria*

---

[2] To the extent BPI's reference to reputational harm may be interpreted as being related to diminution of product value, such an allegation is conclusory in nature and, therefore, insufficient as a matter of law.

*Paris* did not dismiss the plaintiff's FDUTPA claim because the element of malice was missing but, rather, dismissed because the allegations did not satisfy the first element of a FDUTPA claim, to wit, a deception. *See id.* at *4-5 (recognizing that the plaintiff's allegations "do[] not describe how the defendants' conduct was unfair or deceptive"). Courts have uniformly described the elements required to state a claim under FDUTPA to be threefold: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages. *See Rollins*, 951 So. 2d at 869; *KC Leisure*, 972 So. 2d at 1073; *see also Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012) ("To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.") (citation omitted); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012) ("In order to state a claim under the FDUTPA, a plaintiff must plead the following elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."); *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009) ("What one must allege to state a claim under the FDUTPA is (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.") (citation omitted). Given this lack of instruction and resounding precedent to the contrary, the Court declines to read such a requirement into the Act.

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant Labdoor, Inc.'s Motion to Dismiss, **ECF No. [27]**, is **GRANTED**. Because Fed. R. Civ. P. 15(a) requires that leave to amend be given "freely . . . when justice so requires," Plaintiff BPI Sports, LLC shall be permitted an opportunity to amend Counts II and III of the Complaint. Any amendment must be submitted **on or before March 4, 2016**. Failure to amend by the aforementioned deadline will result in abandonment of these claims. Should Plaintiff fail to

amend in the requisite time period, Defendant shall answer Count I of Plaintiff's Complaint within ten (10) days.[3]

**DONE AND ORDERED** in Miami, Florida, this 25th day of February, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

---

[3] Should Plaintiff amend, a response thereto shall be governed by the applicable Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12.